**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE I,  JOHN DOE II, and | § | |
| JOHN DOE III, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-1047 |
| | § | |
| ROMAN CATHOLIC DIOCESE OF | § | |
| GALVESTON-HOUSTON, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Plaintiffs John Doe I, John Doe II, John Doe III, and John Doe IV sued the

Archdiocese of Galveston-Houston; Juan Carlos Patino-Arango, who at the relevant time was

a seminarian training to be a priest; Joseph A. Fiorenza, then Bishop of the Diocese; William

Pickard, then Monsignor of the parish; and Cardinal Joseph Ratzinger, then the prefect of the

Congregation for the Doctrine of Faith and now Pope Benedict XVI.  The plaintiffs are

young men who allege that in 1996, when they were children, Patino used his position as a

clergy member assigned to their church to sexually assault them.  (Docket Entry Nos. 1, 29).

The plaintiffs asserted state-law causes of action for intentional torts, including breach of

confidential relationships, assault by offensive physical contact, intentional infliction of

emotional distress, fraud and fraudulent misrepresentation, sexual exploitation by a mental

health services provider, fraudulent concealment, and conspiracy to commit each of these

torts.  The plaintiffs also asserted causes of action for negligence, including negligence *per*

*se*, negligent misrepresentation involving risk of physical harm, defective premises, and gross negligence.  (*Id.*).

In previous rulings, this court granted Pope Benedict's motion to dismiss on the basis of head-of-state immunity, (Docket Entry No. 62).  This court also dismissed the following causes of action against the Archdiocese Defendants for failure to state a claim under Rule 12(b)(6): vicarious liability for Patino's intentional torts, including assault by offensive physical contact and intentional infliction of emotional distress; breach of confidential or fiduciary relationships; gross negligence and negligence *per se* based on failure to report child sexual abuse; and for intentional and negligent misrepresentation.  This court denied the plaintiffs' motions to amend and supplement with respect to the dismissed claims.  This court denied the Archdiocese Defendants' motion to dismiss the plaintiffs' negligence and gross negligence claims alleging that the Archdiocese Defendants allowed Patino's abuse to occur and continue, and the plaintiffs' claims for recovery based on the allegation that a purported mental-health services provider perpetrated the abuse, and granted plaintiffs' motions for leave to amend and supplement as to these claims.  (Docket Entry No. 63).[1]

The plaintiffs moved for leave to file a second amended complaint, which this court granted.  (Docket Entry No. 91).  Before that complaint was filed, the Archdiocese Defendants moved to strike certain parts of the previously filed first amended complaint under Rule 12(f) of the Federal Rules of Civil Procedure, (Docket Entry No. 74).  The

---

[1]  The plaintiffs named Patino as a defendant but have not served him with process.

Archdiocese Defendants filed an amended answer to the second amended complaint, in which they reassert their motion to strike. (Docket Entry No. 93). The plaintiffs responded to the motion to strike. (Docket Entry No. 77). In the response, the plaintiffs agreed that certain of the allegations should be struck based on the court's prior rulings on the motion to dismiss. The plaintiffs disputed that other allegations were covered by the prior rulings and seek either clarification that they are not dismissed or reconsideration of the court's dismissal rulings. The Archdiocese Defendants replied. (Docket Entry No. 87). The plaintiffs also moved under Rule 12(f) to strike certain affirmative defenses. (Docket Entry No. 78). The Archdiocese Defendants responded, (Docket Entry No. 88), and the plaintiffs replied, (Docket Entry No. 89).

After reviewing the motions and responses, the record, and the applicable law, this court grants in part and denies in part both motions to strike. The reasons are explained below.

## I.      The Legal Standards

A motion to strike material from a pleading is made under Rule 12(f). It allows a court to strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Rule 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted. If it does not involve a purportedly insufficient defense, it simply tests whether a pleading contains inappropriate material. When a Rule 12(f) motion to strike challenges the sufficiency of an affirmative defense, the standards for a Rule 12(f) motion to strike and a Rule 12(b)(6) motion to dismiss are "mirror

image[s.]" *Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F. Supp. 2d 313, 332 (N.D.N.Y.2003) (internal quotation marks and citations omitted); *see also Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1358 (5th Cir. 1983); *Siemens Med. Solutions USA, Inc. v. Sunrise Med. Tech., Inc.*, No. Civ. 3:04-CV-2711-H, 2005 WL 615747, *5 (N.D. Tex. Mar. 16, 2005).

The essential function of a Rule 12(f ) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

## II.    The Archdiocese Defendants' Motion to Strike

The Archdiocese Defendants have filed a motion to strike the following paragraphs from the plaintiffs' second amended complaint: 3.08, 3.18, 3.19, 3.34 (alleging that the Archdiocese Defendants failed to report child abuse); 3.20, 5.08, 8.02–8.06, 14.04–14.07, 14.12 (alleging fraudulent concealment); 5.07, 5.11, 8.06–8.07 (alleging vicarious liability for Patino's conduct); 3.36, 8.05, and 8.07 (alleging "confidential," "quasi-fiduciary," and/or "special" relationship between the Archdiocese Defendants and Patino); 5.06 (alleging negligence); 5.09, 9.02–9.04 (alleging negligent misrepresentation); 5.10 (alleging misrepresentation); 6.01–6.06, 6.08–6.09 (alleging a corporate policy or practice showing the Archdiocese Defendants' knowledge of Patino's dangerous propensities); 8.02–8.06,

14.04–14.07, 14.12 (alleging fraud).   In support of the motion, the Archdiocese Defendants rely on this court's March 27, 2006 Memorandum and Order, which granted the Archdiocese Defendants' motion to dismiss certain claims.  The Archdiocese Defendants are using Rule 12(f) to challenge the reassertion of claims this court previously dismissed and denied plaintiffs leave to reallege through amending or supplementing their complaint.  To some extent, plaintiffs agree that they are precluded by this court's prior rulings from realleging certain claims that this court has already dismissed.  To the extent plaintiffs dispute the motion to strike, they seek either reconsideration or clarification of this court's prior rulings under Rule 12(b)(6).

### A.     The breach of fiduciary duty claims

This court's March 27, 2006 Memorandum and Order dismissed the breach of fiduciary duty claims against the Archdiocese Defendants because Texas does not recognize a fiduciary relationship between a clergy member and a parishioner.  (Docket Entry No. 63 at 9 (citing *Hawkins v. Trinity Baptist Church*, 30 S.W.3d 446, 452–53 (Tex. Ct. App. – Tyler 2000, no writ.)).  The Archdiocese Defendants argue that paragraph 3.36 of the Second Amended Complaint, which alleges that "[a]ll Defendants herein were in a confidential or quasi-fiduciary or special relationship with the Plaintiffs grounded upon the duty of good faith and fair dealing and the obligation to act with the highest degree of trust, confidence, and loyalty," (Docket Entry No. 91, ¶ 3.36), is an attempted end-around this court's ruling. The plaintiffs agreed that Paragraph 3.36 should not be included in their complaint because it alleges breach of fiduciary duty, a claim the court dismissed.   The motion to strike

paragraph 3.36 of the first amended complaint (and the second amended complaint) is unopposed and is granted.  The motion to strike paragraph 8.05 and 8.07 is also granted to the extent it alleges breach of fiduciary duty.

### B.      The claims of negligent failure to report child sexual abuse to law enforcement

The Archdiocese Defendants move to strike paragraphs 3.08, 3.18, 3.19, and subparagraph 7 of paragraph 5.06, which include allegations that the Archdiocese Defendants did not report Patino's conduct to law enforcement authorities.  (Docket Entry No. 87 at 3). The Archdiocese Defendants contend that this court has dismissed these claims.  Plaintiffs respond that this court dismissed plaintiffs' claims of gross negligence and negligence *per se* based on the failure to comply with the Texas child abuse reporting statute.  The plaintiffs agree that to the extent paragraph 3.18 and paragraph 5.06 rely on the Texas child abuse reporting statute, they should be removed from the complaint.  The second amended complaint omits the negligence *per se* claims.  The plaintiffs dispute whether the court's prior rulings preclude them from proceeding on the claims alleged in paragraph 3.08, 3.19, and 5.13 that allege negligence in failing to report Patino's behavior but are not based on noncompliance with the Texas child abuse reporting statute.

This court's previous Memorandum and Order relied on *Perry v. S.N.*, 973 S.W.3d 301 (Tex. 1998), in dismissing the claims for negligence in failing to report child abuse. (Docket Entry No. 63 at 32).  *Perry* decided whether a claim for gross negligence or negligence *per se* could be asserted for failing to comply with the Texas child abuse

reporting statute.   The trial court in that case had granted summary judgment on the

plaintiffs' common law negligence claims on the basis of prior Texas cases refusing to

recognize a common law duty to report abuse.  *See Golden Spread Council, Inc. v. Akins*, 926

S.W.2d 287 (Tex. 1996); *Butcher v. Scott*, 906 S.W.2d 14 (Tex. 1995).  *Perry* declined to

decide whether Texas should impose a new common-law duty to report child abuse because

the plaintiffs did not preserve their common law negligence claims on appeal.  *Perry*, 973

SW.2d at 303.

Although Texas courts have not embraced this negligence theory, they have not

explicitly rejected it.  Dismissal of negligence claims based on a negligent failure to report

child sexual abuse to law enforcement on a Rule 12(b)(6) motion is premature.  The

Archdiocese Defendants' arguments on this issue are more appropriately considered in a

summary judgment motion.  The Archdiocese Defendants' motion to strike paragraphs 3.08,

3.18, 3.19, and 5.06 subparagraph 7, is denied.

### C.     The "general" negligence claims

The Archdiocese Defendants move to strike paragraph 5.06 in the  second amended

complaint.  It  reads:

> The negligent acts arising out of the Defendants' policies and practices include, but
> are not limited to:
>
> 1.     recruiting, hiring, supervising, reassigning, and retaining priests,
>        deacons and seminarians, including Patino-Arango who were
>        either predictable risks as sexual deviants or known to have
>        abused minors;

2.  failing to inform the vulnerable parents that such seminarians, deacons and priests assigned to their parishes were sexual threats;

3.  ignoring warnings from medical professionals even within the Catholic Church or employed by individual dioceses that certain seminarians, deacons and priests were potentially sexually dangerous to children;

4.  misrepresenting facts to victims who requested information about such seminarians, deacons and priests in order to fraudulently conceal the Archdiocese's own negligence;

5.  failing to alert parishioners, previous parishes and the surrounding communities where abusive seminarians, deacons and priests had served that they were exposed to known or suspected child molesters;

6.  ignoring warnings from others within the Archdioceses and bishops conferences who believed that such seminarians, deacons and priests were threats to children;

7.  failing to report the crimes committed by such seminarians, deacons and priests to law enforcement and obstructing or interfering with law enforcement investigations concerning abusive priests;

8.  making decisions which reveal that the interests of abusive seminarians, deacons and priests and the desire to avoid scandal to the Church were vastly superior to the interests of persons who had been abused by seminarians, deacons and priests and of their families;

9.  using Church influence to alter the outcome of the criminal legal process relating to priests who had been engaging in illegal sexual acts and to conspire to spirit them out of the state or out of the United States, as with Patino-Arango, in order to avoid liability and accountability to civil authorities and their victims and to recycle them back into active ministry elsewhere; and

8

> 10.     fostering an environment and culture where abuse of children
> could flourish and in which it was clearly understood that there
> was no corporate accountability for criminal acts toward
> children.

(Docket Entry No. 91, ¶ 5.06).   The Archdiocese Defendants specifically object to

subparagraphs 1, 2, 4, 5, 7, 8, 9, and 10, arguing that they are virtually identical to paragraph

9.02, subparagraphs a, b, d, e, g, i, j, k, l, and m of the proposed amended complaint that the

plaintiffs submitted in May 2005.  In the March 27, 2006 Memorandum and Order, this court

found that these allegations could not "in themselves, serve as a basis on which relief can be

granted."  (Docket Entry No. 63 at 26).  This court did not dismiss all these allegations or

forbid leave to amend or supplement, allowing the plaintiffs to allege facts related to  this

case.  At the same time, this court noted that plaintiffs could not use this case to challenge

general Catholic Church practices or policies unrelated to this case.  (Docket Entry No. 63

at 24–25).

Based on the prior rulings on the motion to dismiss, this court clarifies that

subparagraph 4, which states a fraudulent concealment and misrepresentation claim, was and

remains dismissed.  Although subparagraphs  8 , 9, and 10 are very general, they are not so

"redundant, impertinent, or scandalous" as to require striking, given that the complaint will

not be shown to the jury that will hear this case.  This reading of the claims does not limit the

plaintiffs' ability to allege, for example, a pattern or practice of behavior by the Archdiocese

Defendants that negligently led to the damages suffered by the plaintiffs, but does limit the

plaintiffs' ability to bring in facts and allegations wholly unrelated to this case.

**D.**     **Claims seeking to "put the Catholic Church on trial"**

Relatedly, the Archdiocese Defendants move to strike paragraphs 6.01–6.06 and 6.08–6.09 in the second amended complaint on the ground that they run afoul of this court's ruling that the plaintiffs could not try religious tenets and practices of the Catholic Church. In the March 27, 2006 Memorandum and Order, this court stated that, "The plaintiffs are not, however, precluded from alleging facts that, if proven, could support their claims by showing that the Archdiocese Defendants' actions or omissions with respect to Patino followed a general policy or practice relating to supervision, hiring, and retention of sexually-abusive clerics or to providing information about them." (Docket Entry No. 63 at 26). These paragraphs fall within these parameters. The motion to strike these paragraphs is denied. The Archdiocese Defendants' challenges to these paragraphs are less challenges to the pleadings than to the admissibility of the evidence summarized or referred to in those paragraphs; such challenges are not appropriate to a motion to strike under Rule 12(f).

**E.**     **The misrepresentation claims**

The Archdiocese Defendants move to strike paragraphs 3.18, 5.09 -5.10, 5.11, 8.02-8.04, 9.02-9.05, 14.04–14.07, and 14.12 in the second amended complaint on the ground that this court previously dismissed these fraudulent and negligent misrepresentation claims. In the March 27, 2006 Memorandum and Order, this court granted the Archdiocese Defendants' motion to dismiss the fraudulent, intentional, and negligent misrepresentation claims. (Docket Entry No. 63 at 30–31). The recently filed second amended complaint, like the

10

earlier filed complaints, does not state a valid fraudulent concealment or fraudulent, intentional, or negligent misrepresentation claim under Texas law.

In responding to the motion to strike, the plaintiffs ask this court to reconsider this ruling. (Docket Entry No. 77 at 6). In making this request, the plaintiffs list the elements of a fraud claim, including the requirement that the defendant make a representation to the plaintiff, but fail to allege any misrepresentation in the second amended complaint. The pleading standard applicable to fraud claims requires such an allegation. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) ("That Rule [FED. R. CIV. P. 9(b)] requires a plaintiff to specify the alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent.") (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 349-50 (5th Cir. 2002); FED. R. CIV. P. 9(b)); *see also Bevan v. Gen. Elec. Credit Equities*, No. 14-98-00233-CV, 1999 WL 1041185, *2 (Tex. App. – Houston [14th Dist.] 1999, pet. denied) ("[A] plaintiff's statement of what he thought was implied by defendant's representation is not sufficient to support an actionable misrepresentation."). The most specific allegation that the plaintiffs make is that in May 1996, the Archdiocese Defendants allegedly informed the plaintiffs that Patino would be removed from the ministry and that his conduct would be reported to the police. (Docket Entry No. 91, ¶ 8.02). This alleged misrepresentation does not support a fraud claim on which relief may be granted because the plaintiffs do not allege how they relied on these representations or how any reliance caused them harm. No plaintiff alleges that he was again put into contact with Patino; instead, the plaintiffs allege that Patino "may well have abused more minors before

he was spirited out of the United States by" the Archdiocese Defendants.  (*Id.*).  This speculation is unrelated to any plaintiff's injury.  The remainder of the fraud claims rely on general misrepresentations that do not meet the Rule 9 standard.  (*See, e.g.*, *id.* at ¶ 8.04 ("All Defendants . . . fraudulently misrepresented to the public, including Plaintiffs and their parents, that Patino-Arango was a sexually safe, moral cleric who would not be sexually dangerous to minors.")).

Similarly, the first and second amended complaints fail to allege misrepresentations that could form the basis for recovery under a negligent misrepresentation theory.  Because the plaintiffs have again failed to include allegations of specific misrepresentations on which they relied for which relief may be granted, this court adheres to its previous decision dismissing the fraud- and misrepresentation-based claims.  The intentional and negligent misrepresentation claims and related conspiracy claims were, and remain, dismissed.

Plaintiffs alternatively contend that because this court denied the Archdiocese Defendants' motion to dismiss under the statute of limitations, the motion to strike the fraudulent concealment allegations should be denied.  (Docket Entry No. 77 at 6).  This argument is based on a misreading of this court's opinion.  The court ruled that the plaintiffs have filed certain claims that overcome limitations bars to recovery;  this ruling did not turn on allegations of fraudulent concealment as a means to toll limitations or delay the accrual of a claim.  The Archdiocese Defendants' motion to dismiss (and strike) paragraphs 3.20, 5.08, 8.02–8.06, 14.04–14.07, and 14.12 is granted.

**F.  The vicarious liability claims**

The Archdiocese Defendants move to strike paragraphs 5.07, 5.11, 8.06, and 8.07 of the second amended complaint on the ground that these paragraphs assert vicarious liability claims that this court has dismissed.  (Docket Entry No. 87 at 1–2).  As noted above, paragraphs 8.06 and 8.07 allege fraudulent misrepresentation and were dismissed on that basis.  The motion to strike is granted as to those paragraphs.

The plaintiffs argue that paragraph 5.07 alleges direct rather than vicarious liability. Plaintiffs invoke Section 302B of the RESTATEMENT (SECOND) OF TORTS, which provides liability under the doctrine of negligent assumption of the risk of intentional or criminal conduct.  (Docket Entry No. 77 at 2).  Plaintiffs contend that in *Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, 926 S.W.2d 287 (Tex. 1996), the Supreme Court of Texas recognized such liability.  In *Akins*, the court quoted comment e to Section 302B, which recognizes that there may be liability "[w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct."  RESTATEMENT (SECOND) OF TORTS § 302B, cmt e, ¶ D (quoted in *Akins*, 926 S.W.2d at 291).  *Akins* held that if a person or organization knew or should have known that someone was "peculiarly likely to molest boys, it had a duty not to recommend him" for a position that would put him into close and unsupervised contact with boys.  The Archdiocese Defendants argue that *Akins* imposed this duty only on a defendant who has recommended the sexual predator for a position that involves close and unsupervised contact with potential victims and argue that the plaintiffs do not allege that the

Archdiocese Defendants recommended Patino for the clerical position he held when he committed the alleged acts.

This court agrees that the duty imposed by *Akins* is narrow, but disagrees that the plaintiffs have not or could not allege facts that, if proven, could state a negligence claim against the Archdiocese Defendants under this theory.  The challenge to the claim can be raised in a summary judgment motion.  The motion to strike paragraph 5.07 and the related damages allegation in paragraph 5.11 is denied.

## III.   The Plaintiffs' Motion to Strike the Archdiocese Defendants' Affirmative Defenses

The plaintiffs have filed a motion to strike the following affirmative defenses: (1) statute of limitations; (2) laches and estoppel; (3) federal constitution, state constitution, and the Religious Freedom Restoration Act; (4) damages proximately caused by others; and (5) responsible third parties.  "Before such a motion can be granted, the court must be convinced that there are no questions of fact and that any questions of law are clear and not in dispute, and that under no set of circumstances can that defense succeed." *Puckett v. United States*, 82 F. Supp. 2d 660, 662–63 (S.D. Tex. 1999) (quoting *Soanes v. Baltimore & O.R. Co.*, 89 F.R.D. 430, 431 n.1 (E.D.N.Y. 1981)).  Because most of the affirmative defenses that the plaintiffs wish to strike are fact-bound, a motion to strike is unlikely to prevail at this stage of the case.

In the March 29, 2006 Memorandum and Opinion, this court largely rejected the Archdiocese Defendants' statute of limitations defense.  Striking the defense entirely,

14

however, is inappropriate, because although the current record does not permit such a defense, the Archdiocese Defendants could later find and introduce facts sufficient to show that the statute of limitations has run on certain claims.  The motion to strike the statute of limitations defense is denied.

The motion to strike the affirmative defenses asserting laches and estoppel, proximate cause, and responsible third-party liability is denied on the same basis.  The Archdiocese Defendants have pleaded each of these affirmative defenses in a way that, if proven, would reduce or eliminate their liability for the alleged harm.  The motion to strike these defenses is denied.

In the March 27, 2006 Memorandum and Opinion, this court rejected the Archdiocese Defendants' constitution-based affirmative defenses as a matter of law.  (Docket Entry No. 63 at 26).  The Archdiocese Defendants argue that "[s]o long as the plaintiffs make allegations or seek discovery concerning the Catholic Church generally, the religious internal policies and practices of this Archdiocese, or the religious tenets of the Church, the Archdiocese Defendants are titled to defend those allegations with the religious protections of the U.S. Constitution, the Texas Constitution, and the Religious Freedom and Restoration Act." (Docket Entry No. 88 at 3–4).  This court has dismissed, and will not permit discovery into, the religious tenets or policies of the Church.  The plaintiffs' claims are  limited to the facts and parties involved in this case; the claims against the Archdiocese Defendants "involve an examination of the defendants' possible role in allowing one of its employees to engage in conduct which they, as employers, as well as society in general expressly

15

prohibit." *Nutt v. Norwich Roman Catholic Diocese*, 921 F. Supp. 66, 74 (D. Conn. 1995). A First Amendment-based affirmative defense cannot shield the Archdiocese Defendants from liability from such claims.  The motion to strike the federal and state constitutional and statutory affirmative defenses is granted.

## IV.    Conclusion

The Archdiocese Defendants' motion to strike is granted in part and denied in part. The following paragraphs from the Second Amended Complaint must be stricken: 3.20, 3.36, 5.08, 5.06(4), 8.02–8.07, 14.04–14.07, 14.12.

The plaintiffs' motion to strike is granted only as to the federal constitutional and statutory affirmative defenses and as to the state constitutional affirmative defense, and is otherwise denied.

The plaintiffs must submit a Third Amended Complaint in conformity with this decision by **September 1, 2006.**  The Archdiocese Defendants should file an Amended Answer in conformity with this decision by **September 8, 2006.**

SIGNED on August 18, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge